FILED
IN OPEN COURT

APR 1 2 2017

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:17-CR-68 (LMB) |
| | ) | |
| JESUS R. MUCHACHO, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, JESUS R. MUCHACHO, stipulate that the

allegations in the one-count criminal information and the following facts are true and correct and

that, had the matter gone to trial, the United States would have proven them beyond a reasonable

doubt with competent and admissible evidence.

1.      The defendant, JESUS R. MUCHACHO, was a naturalized U.S. citizen from

Maracay, Venezuela. On or about July 27, 2009, the U.S. Customs and Border Protection

("CBP") hired the defendant as a CBP Officer. On or about December 15, 2013, the CBP re-

assigned the defendant to Herndon, Virginia, within the Eastern District of Virginia, where he

served as a Program Manager in CBP's National Targeting Center Cargo ("NTCC").

2.      The NTCC was a 24/7 operations center that targeted and coordinated the

examination of high-risk cargo entering the United States and those persons associated with

these shipments. These examinations supported CBP's international and domestic anti-terrorism

efforts.

3.      As a CBP Officer and a Program Manager at the NTCC, the defendant held a Top Secret security clearance to perform his official duties and responsibilities. To obtain and maintain a Top Secret security clearance, CBP employees were required to complete a background investigation when they were hired and, every five years thereafter, were required to undergo a periodic reinvestigation. Among other things, the background investigations and periodic reinvestigations included the following: (a) the completion of a Standard Form 86, Questionnaire for National Security Positions ("SF-86"); (b) participation in a personal subject interview (conducted by an investigator); and (c) completion of an employee supplemental questionnaire.

4.      CBP employees undergoing background investigations and periodic reinvestigations for national security positions were required to affirm that they had provided truthful and accurate information. CBP employees were also warned and advised that providing false or misleading information during a background investigation could result in criminal prosecution and, among other things, could adversely affect their eligibility for access to classified information or sensitive positions; their ability to obtain or retain Federal or contract employment; and their eligibility for physical and logical access to federally controlled facilities or information systems.

5.      The defendant underwent a background investigation in 2009, when he was hired by CBP, and a periodic reinvestigation in or about March and April 2014. In or about June 2016, the defendant also completed and submitted an application to obtain access to sensitive compartmented information ("SCI"), which was information concerning or derived from highly sensitive sources, methods, or analytical processes. Access to SCI was only granted to CBP

employees with a current Top Secret security clearance and a current single scope background investigation ("SSBI").

6.      The defendant's Top Secret security clearance gave him access to classified national security information and sensitive information.  The defendant also had access to protected law enforcement database systems maintained by the U.S. Federal Bureau of Investigation, the U.S. Department of Homeland Security, and the U.S. Department of State. The CBP used these law enforcement databases to assess the risk or threat posed by a person or their related goods and cargo entering or exiting the United States.  Because the information contained within these various systems was sensitive and could not be queried without an official government purpose (or disclosed to anyone without proper authorization), access to these systems was only granted to employees of the U.S. Government who had successfully completed a background investigation, who were authorized by position, and who had a need to know.

7.      CBP provided training to the defendant regarding the foregoing policies. Moreover, when accessing CBP's computer systems and law enforcement databases, the defendant affirmatively acknowledged U.S. Government policies through logon computer banners that contained explicit access and use restrictions.

8.      Between in or about 2015 and in or about 2016, the defendant traveled several times to and from Venezuela using valid passports issued by both Venezuela and the United States.

9.      Between in or about 2014 and in or about 2016, the defendant: (a) sent and received e-mails to and from his government e-mail account and one of his personal e-mail accounts, including e-mails that contained highly sensitive information; (b) exceeded his authorized access by searching law enforcement databases and accessing sensitive information

contained in multiple databases for unofficial purposes; and (c) made unauthorized disclosures of law enforcement and sensitive information to third parties, including foreign associates without a need to know.

**A.      The Defendant's Disclosures During His Background Investigations**

10.      On or about March 13, 2014, the defendant signed, certified, and submitted his SF-86 in connection with his periodic reinvestigation. The defendant falsely answered "no" to a question asking whether he currently has, or ever held, dual or multiple citizenship and to a question asking whether he had any contact with foreign governments.

11.      On or about April 7, 2014, in Herndon, Virginia, within the Eastern District of Virginia, the defendant signed, certified, and submitted an employee supplemental questionnaire as part of his periodic reinvestigation. A background investigator also interviewed the defendant. During the interview, the defendant stated that he was a naturalized U.S. citizen, but he falsely stated that he was not claiming dual citizenship with another country.

12.      On or about June 13, 2016, the defendant completed an electronic application to obtain SCI clearance. Although the application for SCI clearance did not have to be signed by the applicant, the defendant falsely answered "no" on a question asking whether he held dual citizenship.

**B.      The Defendant's Interviews in 2016**

13.      On or about November 29, 2016, upon his arrival at Dulles International Airport, within the Eastern District of Virginia, the defendant was questioned by CBP officers during a secondary inspection. The defendant falsely told the officers that he had an expired Venezuelan passport, which he left at his residence in the United States. When confronted on this topic, the

defendant eventually acknowledged that he departed the United States with a Venezuelan passport that he claimed was stolen upon his arrival in Venezuela.

14.     On or about December 1, 2016, the defendant participated in a voluntary interview in Herndon, Virginia, within the Eastern District of Virginia, that was recorded by federal law enforcement officers. After signing a *Garrity* waiver form, the defendant falsely stated during the interview that: (a) he never sent CBP or U.S. government information outside of the CBP systems; (b) he never sent work or U.S. government information to his personal e-mail accounts; (c) no one seriously asked him for official help (although family members and friends jokingly asked him for help); (d) no one ever asked him for CBP or U.S. government information; (e) he never provided anyone with CBP or U.S. government information without an authorized need to know; (f) he never conducted CBP or U.S. government database checks on friends or family or anyone other than for official purposes. The defendant subsequently admitted during the interview to doing all of these things. For instance, he later admitted in the interview that he sent CBP information to his personal e-mail account, which he knew was wrong; he checked databases for information relating to friends and relatives, which he knew was wrong; and he disclosed sensitive information to associates, but not in exchange for bribes.

15.     On or about December 1, 2016, during the same voluntary interview, the defendant falsely stated that he obtained his Venezuelan passport immediately prior to his trip in November 2016 and that, prior to then, he traveled in and out of Venezuela on his U.S. passport. The defendant later admitted during the interview that, for the past few years, he had been traveling into Venezuela on a Venezuelan passport.

16.     On or about December 1, 2016, during the same voluntary interview, the

defendant admitted that he made false statements on his March 2014 SF-86 and his June 2016

application for SCI clearance.

## CONCLUSION

17.     The acts taken by the defendant, JESUS R. MUCHACHO, in furtherance of the

offense(s) charged in this case, including the acts described above, were done willfully and

knowingly and with the specific intent to violate the law.  The defendant acknowledges that the

foregoing statement of facts does not describe all of the defendant's conduct relating to the

offense(s) charged in this case nor does it identify all of the persons with whom the defendant

may have engaged in illegal activities.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:   _____
Edward P. Sullivan, Special Assistant U.S. Attorney
Grace L. Hill, Assistant U.S. Attorney
Counsel for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:  703-299-3700
Tel:  202-305-1746
edward.p.sullivan@usdoj.gov
grace.hill@usdoj.gov

-6-

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Jesus R. Muchacho, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____   3/29/17
Jesus R. Muchacho

I am Jesus R. Muchacho's attorney.  I have carefully reviewed the above Statement of Facts with him.  To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____   3/29/17
William B. Cummings, Esq.
Attorney for Jesus R. Muchacho

-7-